Robertson, Ch. J.
— One distinction "between this case and the cases of Johnson v. Bank of North America (5 Hob., 554), in this court, and Turner v. Bank of Fox Lake (3 Keyes, 425), is rather in favor of the plaintiffs in this case. This action is for the price of merchandise sold, and not on any draft. The defense set up was a remittance of a draft by the defendants in payment of the “balance” due to the plaintiff upon such sale, and the payment and satisfaction of such draft by the drawees, its surrender, and the acknowledgment by the plaintiffs to the defendants that it had been paid. The various authorities referred to in the opinion of the court in the first case (Johnson v. Bank of North America, 5 Hob., 554, 590), as well as in the second case, fully show that the acceptance of a negotiable instrument for a debt is not a payment of it, without a separate agreement to that effect, distinctly proved. The debt due for the merchandise sold in this case was not, therefore, paid by the mere remittance of the draft in question, unless it was agreed to be received as payment. That is neither alleged in the answer, nor was there any evidence in the case of any such separate agreement. For I do not regard the request contained in the letter of the plaintiffs dated November 16, 1867, to the defendants, to remit “the balance on their lot,” the announcement in the answer of the defendants, two days afterwards (November 18), that they enclosed their draft for a certain sum ($2,968.69), “being balance due them on last invoice ;” and the reply, dated next day (November 19), acknowledging the receipt of such draft, and stating that it had been paid, as making out such an agreement. Consequently it was not by the mere receipt of the draft that it became a payment and satisfaction of the original claim, and the plaintiffs were to be confined to a right of action upon it. If its receipt operated in any way to discharge the defendants from their original cause of action, it must have been in consequence of the plaintiffs’ subsequent mode of dealing with such draft. If not a payment, such draft became mere collateral security for *236 the original debt; and the plaintiffs could only become liable therefor by a violation of some undertaking bn their part to collect the draft, implied from the mere fact of taking it as such security. It was also a sight draft, and it does not appear when it was received by the plaintiffs; but if not received until the nineteenth, apresentment on the twentieth might have been in time; for the receipt of the check on the former draft (if not an absolute payment), and its presentation on the latter day, might have operated as a good demand on the last day of payment of the draft. For if a check is to be considered as a mere means of obtaining the money, as was held by Clerke, J., in Bradford v. Fox (39 Barb., 205), and according to the ordinary rule as between drawer and payee, the former is not discharged if it be presented next day after it is given. Such an interpretation might have been put on the conduct of the plaintiffs.
There was, however, a piece of evidence in the case, which might have warranted'the submission to the jury of the question whether the check of the drawees was agreed to be received in payment of the draft or not; and that was their letter of November 19, acknowledging that the latter had ‘‘been paidbut the defendants did not ask to have it submitted, and a re-argument is not asked on that point.
But assuming that the plaintiffs were bound to jnesent the draft in question on November 19, and that it being presented on that day, and ’& check received for it, such receipt made the latter a payment thereof, either absolute or conditional, I think this case clearly within the first cited cases (Johnson v. Bank of North America, and Turner v. Bank of Fox Lake, ubi sup.), to wit: that if a check of the drawees of a draft received in exchange for it, be not paid on presentation to the person on whom it was drawn, the next day after it is given, the liability of the drawer still remains, on due notice of such demand and non-payment to him.
I am aware of the strong argument which may be f built upon the assumption that it is the duty of a holder *237 of a draft, in order to retain the liability of the drawer, to insist on its payment in money, when presented for payment, and in case of a refusal to give that, to notify such drawer of such demand and non-payment in money, and I am also aware of the other inference' that may be naturally drawn from such assumption, that the surrender of the draft and an acceptance of the check of the drawee therefor, must be construed to be a payment in law, because the holder thereby shows an intention not to insist on absolute payment in cash, but to take the chances of the goodness of the check, and look for payment to the drawee’s responsibility on it alone.
The case of Kobbe v. Clark (4 Seld. Notes, 11), cited as authority for the freedom of the defendants from liability, evidently did not proceed upon any such doctrine as that the holder of a draft was bound in all cases to demand the payment of it in money, when presented for that purpose, and that if he gave time for its payment until next day, by taking a check therefor, and waiting until that time to present it, he thereby made such check his own, and its receipt a payment of the draft. For the learned justice of this court, before whom that case was tried, in his charge’ to the jury, made the exemption from liability of the defendant to depend upon two contingencies :
First. Whether the drawers of the draft in question would have paid cash for it if their check had been refused ; and
Second. Whether the check would have been paid if presented the day it was given ; one of which questions, of course, must have been found by the jury in favor of the defendant to warrant the verdict.
The first question so submitted evidently concedes that the taking of a check is justifiable, and the liability of the drawers is retained, although the drawers would not pay the money upon demand ; and the second assumes the effect of taking the check, in discharging the drawers, to have depended on the diligence or want of it exhibited in attempting to collect it. Both imply that *238 the mere taking of the check and surrender of the draft did not in themselves discharge the drawers.
That case, however, evidently impliedly acknowledges that if neither of such contingencies (on which the jury were allowed to speculate) would have happened, the presentation of the check for payment on the day after it was given, was in time, and retained the liability of the drawers of the draft, and that very doctrine is admitted in this case. The case of Caldwell v. Sanderson, however, cited on the argument from 8 Bank. Mag. N. S., 962 (which can hardly be considered as a professional work), meets the point fully, for in that case it was contended that the taking of the check and surrender of the draft was a payment of the latter, and the court so held. It is not so remarkable that the court of appeals should have overlooked the first case of Kobbe v. Clark, as it was not reported in any regular book of reports, or if they had it in view should have intended to overrule a case, which left the liability of a drawer to depend on the mere speculations of a jury on probabilities as to what a drawee would be likely to have done if the check had been refused, or whether the latter was likely to have been paid if presented on the day it was drawn, and rather made such liability to depend upon the presentment of the check, its refusal, and notice of non-payment of the draft within the time necessary to have notified the drawer, if no check had been taken, and payment of the draft had been refused. And so I understand the court to have done in the recent case, before cited (Turner n. Bank of Fox Lake, ubi supra).
It is not necessary to comment on those cases in which a collecting agent has been made liable for want of due diligence in not presenting a check received by him for a draft placed in his hands for collection ; such as Nunnemaker v. Lanier (48 Barb., 234); Commercial Bank of Pennsylvania v. Union Bank of New York (11 N. Y. [1 Kern.], 214). They depend upon an entirely different relation of the parties, and different duties, and are wholly inapplicable.
*239 The only report of the case of Turner v. Bank of Fox Lake published, has several typographical errors, consisting principally of the substitution of the words “drawers” for “drawees” in nearly every place where the latter should have occurred, and it therefore may have misled the counsel in this case. It clearly holds that the taking of a check for a draft was only “ equivalent to the taking by a creditor from his debtor of an obligation of a third person,” and that the presentment of such check next day through the New York clearing house, was in time to discharge any obligation assumed by the holder in regard to it, so as to leave the drawer of the draft still liable. Apparently, the only reason given in such case for holding a presentment of the check the next day to be in time, was that it was according to the regular course of business for presenting checks in banks of New York : that has already been held to be the legal time in all cases when the check is drawn upon a drawee in a place where both parties reside (Mohawk Bank v. Broderick, 13 Wend., 443), and to this may be added the consideration that notice of non-payment of the draft on demand of it, is in time if given on that day. Of course we are bound by the decision in that case, even if we saw good reason for departing from that of Johnson v. Bank of North America {ubi supra), and as the inapplicability of the former is the sole reason for asking a re-argument, it must be denied, since two of the judges of this court so read that case in their opinions, even supposing the other judges who joined with them in their decisions in both cases to have misunderstood it. One of the justices who dissented in Johnson v. Bank of North America (Mowell, J.), concurred in the former decision of this case, as I understand, so that more than a majority of the court have joined in the same view of Turner v. Bank of Fox Lake, and it would be hopeless to expect to do away with that view.
I have gone, perhaps, more fully into the merits of the case than was necessary to decide the motion, which was founded upon a mere supposed miscon *240 struction "by the court of a recent decision, and does not come within the principles laid down in Newell v. Wheeler (4 Rob., 190), and Rector, &c. of Trinity Church v. Higgins {Id., 372), but I deemed it proper to re-assert the doctrine established in Johnson v. Bank of North America, on the strength of the case in the court of appeals.
The motion must be denied, with $10 costs.
Garvin, J., concurred.
Barbour, J.
Without expressing an opinion upon any of the questions presented upon the argument of the appeal, or decided by the court, and now discussed in the opinion of the learned chief justice on this motion, I concur with him in thinking that the motion for a re-argument ought to be denied. This conclusion, however, is based solely upon the ground that the case appears to have been fully and ably argued at general term, and no sufficient reason is shown for a reconsideration here of any important questions involved in the controversy.